## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

**ALKEMI MANAGEMENT, LLC,**

**PLAINTIFF**

**vs.**                                                    **CIVIL ACTION NO.: 9:15-CV-80795-WJZ**

**DONALD P. BROBST; A. CHANDLER**
**MULLER; and C. DENNIS WOOLDRIDGE**

**DEFENDANTS**

---

## ANSWER TO PLAINTIFF'S COMPLAINT AND
## COUNTER AND THIRD-PARTY COMPLAINT ON BEHALF OF COUNTER-CLAIM
## PLAINTIFFS

COME NOW the Defendants, Donald P. Brobst ("Brobst"), A. Chandler Muller ("Muller") and C. Dennis Wooldridge ("Wooldridge") (collectively, the "Defendants"), by and through their undersigned counsel of record, and hereby answer Plaintiff's Complaint as follows:

1.  Defendants admit the transactions set forth in this paragraph are for an amount above $250,000.00. Defendants deny all factual allegations found in this paragraph and demand strict proof thereof.

2.  Admitted.

3.  These Defendants can neither admit nor deny the allegations in this paragraph.

4.  Admitted.

5.  Admitted.

6.  Admitted.

7.  Admitted

00837833

8.      Admitted.

9.      The allegations in this paragraph involve a conclusion of law and are not properly admitted or denied.  To the extant an answer is deemed proper, these Defendants can neither admit nor deny the allegations in this paragraph.

10.     Admitted.

11.     Admitted.

12.     Defendants deny all factual allegations found in this paragraph and demand strict proof thereof.

13.     Defendants deny all factual allegations found in this paragraph and demand strict proof thereof.

14.     As stated, Defendants deny all factual allegations found in this paragraph and demand strict proof thereof.

15.     As stated, Defendants deny all factual allegations found in this paragraph and demand strict proof thereof.

16.     Defendants deny all factual allegations found in this paragraph and demand strict proof thereof.

### COUNT 1 – Breach of Contract – Non-Solicitation

17.     Defendants reassert their previous answers as if fully set forth herein.

18.     As stated, Defendants deny all factual allegations found in this paragraph and demand strict proof thereof.

19.     Defendants deny all factual allegations found in this paragraph and demand strict proof thereof.

20.     Defendants deny all factual allegations found in this paragraph and demand strict proof thereof.

21.     Defendants deny all factual allegations found in this paragraph and demand strict proof thereof.

22.     Defendants deny all factual allegations found in this paragraph and demand strict proof thereof.

23.     Defendants deny all factual allegations found in this paragraph and demand strict proof thereof.

<b><u>COUNT 2 – Breach of Contract – Hiring Employees</u></b>

24.     Defendants reassert their previous answers as if fully set forth herein.

25.     Defendants deny all factual allegations found in this paragraph and demand strict proof thereof.

26.     Defendants deny all factual allegations found in this paragraph and demand strict proof thereof.

27.     Defendants deny all factual allegations found in this paragraph and demand strict proof thereof.

28.     Defendants deny all factual allegations found in this paragraph and demand strict proof thereof.

<b><u>COUNT 3 – Breach of Contract – Non-Interference</u></b>

29.     Defendants reassert their previous answers as if fully set forth herein.

30.     Defendants deny all factual allegations found in this paragraph and demand strict proof thereof.

31.     Defendants deny all factual allegations found in this paragraph and demand strict proof thereof.

32.     Defendants deny all factual allegations found in this paragraph and demand strict proof thereof.

## AFFIRMATIVE DEFENSES
### FIRST DEFENSE

The Complaint fails to state a claim against the Defendants upon which relief can be granted.

### SECOND DEFENSE

Defendants deny each and every material allegation of Plaintiff's Complaint and demand strict proof thereof.

### THIRD DEFENSE

All actions taken by the Defendants relating to the claims were taken in good faith.

### FOURTH DEFENSE

The facts not having been fully developed, the Defendants further affirmatively plead the following affirmative defenses as may be applicable in this action: accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge and bankruptcy, duress, estoppels, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.

### FIFTH DEFENSE

Defendants hereby give notice that they intend to rely upon such other and further defenses as may become available to them or apparent during the discovery of this civil action, and reserve the right to amend their answer to assert any such defenses.

### SIXTH DEFENSE

Plaintiff's claims are barred to the extent that Plaintiff failed to mitigate its alleged damages, if any.

### SEVENTH DEFENSE

Any claim by the Plaintiff for equitable relief is barred, in whole or in part, by the equitable doctrine of unclean hands.

### EIGHTH DEFENSE

The prayer for punitive damages seeks to impose an excessive fine within the meaning of the Excessive Fines Clause of the Eighth Amendment to the Constitution of the United States.

### NINTH DEFENSE

Defendants specifically deny that they are guilty of reckless, willful and intentional or malicious conduct, or any wrongful conduct for which punitive damages may be imposed.

### TENTH DEFENSE

Defendants deny that they breached any duty to Plaintiff.

### ELEVENTH DEFENSE

The Defendants deny that any of their agents or employees or anyone acting on their behalf breached any duty to Plaintiff, caused any of Plaintiff's alleged injuries or damages, either

directly or proximately, or acted negligently, wantonly, or with reckless disregard toward Plaintiff.

### TWELFTH DEFENSE

Plaintiff's alleged injuries and damages are not the proximate consequence or result of any conduct on the part of the Defendants.

### THIRTEENTH DEFENSE

Defendants deny that Plaintiff's alleged injuries and damages are the result of any act or omission on the part of Defendants.

### FOURTEENTH DEFENSE

Defendants deny the extent, degree, and nature of damages claimed by the Plaintiff.

### FIFTEENTH DEFENSE

Plaintiff's alleged injuries were not directly or proximately caused by any act or omission of the Defendants.

### SIXTEENTH DEFENSE

Plaintiff's alleged injuries were caused by intervening and superseding causes which had no relation to any conduct of the Defendants.

### SEVENTEENTH DEFENSE

Plaintiff's alleged injuries and damages were caused in whole or in part by preexisting conditions of Plaintiff for which the Defendants bear no responsibility.

### EIGHTEENTH DEFENSE

Defendants deny that any of their agents or employees or anyone acting on their behalf breached any duty to Plaintiff, caused any of Plaintiff's alleged injuries or damages, either

directly or proximately, or acted negligently, wantonly, or with reckless disregard toward Plaintiff. To the extent any such agent or employee or anyone acting on the Defendants' behalf did breach any duty to Plaintiff, caused any of Plaintiff's alleged injuries or damages, either directly or proximately, or acted negligently, wantonly, or with reckless disregard toward Plaintiff, which the Defendants deny, such acts or omissions would be outside the scope of such person's employment or agency, thus barring Plaintiff's claims that the Defendants are liable under the theory of respondeat superior.

## NINETEENTH DEFENSE

As a separate affirmative defense to the Complaint, and to each purported cause of action thereof, Defendants are not liable in the capacity in which they have been sued in that at all times they were exercising their best business judgment and cannot be held liable for their acts, actions or omissions pursuant to the Business Judgment Rule.

## TWENTIETH DEFENSE

Plaintiff has failed to state a claim for punitive damages because he has not alleged the type of conduct that would meet the standards set forth by *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.ed.2d 632 (1983).

## TWENTY-FIRST DEFENSE

Defendants reserve the right to amend this Answer as additional discovery in this action is completed.

## COUNTER AND THIRD-PARTY COMPLAINT ON BEHALF OF COUNTER-CLAIM PLAINTIFFS MULLER, BROBST AND WOOLDRIDGE

Defendant/Counter-Claim/Third-Party Plaintiffs Muller, Brobst, and Wooldridge ("Counter-Claim Plaintiffs"), through direct actions as members of Alkemi Management, LLC and, with respect to Muller, derivatively on behalf of Alkemi Management, LLC, allege upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through their attorneys, which included among other things, a review of available corporate documents, review of investigation made by its attorneys, and other publicly available documents regarding the Alkemi Management, LLC, as follows:

### SUMMARY

1. Counter-Claim Defendant Joseph Herrod is the primary owner and manager of Alkemi Management, LLC ("Alkemi" or the "Company"). He has held this position from the Company's formation in September, 2014, to the present (the "Relevant Period").

2. Herrod was in charge of managing both Alkemi's business and its only contract during the Relevant Period, which was between the Company and third-party Central Alabama Primary Care Specialists, LLLP, and its restructured entity Central Alabama Primary Care Specialists, LLC (collectively "CAPCS").

3. Despite the obligations imputed upon the Company under the Management Agreement entered in between CAPCS and Alkemi (the "Management Agreement"), Herrod, in violation of

his duties to Alkemi, surreptitiously, systematically, and intentionally failed to honor those obligations.

**4.** CAPCS ultimately terminated the Management Agreement with Alkemi due to Herrod's malfeasances.

**5.** Herrod similarly breached his duties to Alkemi.

**6.** The unlawful conduct occurred while Herrod was managing the Company. He authorized or failed to stop his actions in dereliction of his fiduciary duties to Alkemi and each of its members, thus causing or allowing Alkemi and its members to suffer wide-ranging harm economically, personally, professionally, and in reputation.

**7.** Counter-Claim Plaintiffs, directly, and Muller, derivatively on behalf of Alkemi, seek relief for the damages sustained and currently being sustained by themselves and Alkemi due to the prior and continuing actions of its Manager, Joseph Herrod ("Herrod"), including his breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment, breach of contract, fraud and other corporate violations which occurred during the Relevant Period.

## JURISDICTION AND VENUE

**8.** This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. § 1332 and § 1367.

**9.** Defendants do not, by filing counterclaims in the above-captioned matter, concede that Plaintiff's claims against the Defendants belong in the Southern District of Florida. However, because these counterclaims are asserted in an action where Plaintiff filed claims in this District,

this Court has personal jurisdiction over Plaintiff and venue is proper under 28 U.S.C.S. §§ 1391 (b) and (c).

**PARTIES**

**The Counter-Claim Plaintiffs**

**10.** Counter-Claim Plaintiff Chandler Muller is an Alabama resident and a citizen of Alabama for diversity purposes.

**11.** Counter-Claim Plaintiff Donald P. Brobst is an Alabama resident and a citizen of Alabama for diversity purposes.

**12.** Counter-Claim Plaintiff C. Dennis Wooldridge is an Alabama resident and a citizen of Alabama for diversity purposes.

**The Counter-Claim Defendants**

**13.** Nominal Counter-Claim Defendant Alkemi is allegedly a Florida limited liability company with Joseph Herrod and Reynold Yordy as its members. Though the Counter-Claim Plaintiffs claim they were inappropriately ousted as members and thus the ouster was ineffective, Alkemi is a citizen of Florida and Tennessee for diversity reasons.

**14.** Counter-Claim Defendant Herrod is a resident of Florida and a citizen of Florida for diversity purposes.

**15.** Non-Party Yordy is a resident of Tennessee and a citizen of Tennessee for diversity purposes.

**OBLIGATION AND DUTIES OF THE COUNTER-CLAIM DEFENDANTS**

**16.** By reason of his position as manager, officer, and/or fiduciary of the Company and because of his ability to control the business, corporate and financial affairs of the Company,

Herrod owed the Company and its members the duty to exercise due care and diligence in the management and administration of the affairs of the Company and in the use and preservation of its property and assets; the duty of loyalty, to put the interests of the Company above his own financial interests; and the duty of candor, including full and candid disclosure of all material facts related to the management and administration of the affairs of the Company. Further, Herrod owed a duty to the Company and its members to ensure  the Company operated in compliance with all applicable federal and state laws, rules, and regulations, and that the Company not engage in any unsafe, unsound, or illegal business practices. *Fla. Stat.* § 605.04091.

**17.** The conduct of Herrod complained of herein involves knowing violations of his duties as manager of the Company, and the absence of good faith on his part, which he was aware or should have been aware, posed a risk of and caused serious injury to the Company and the Defendants.

**18.** To discharge his duties, Herrod was required to exercise reasonable and prudent supervision over the management, policies, practices, controls, and financial and corporate affairs of the Company.

**19.** Specifically, Herrod was bound to manage and to properly execute the obligations of Alkemi in its Management Agreement with CAPCS dated September 30, 2014. (Attached as Exhibit "A").

**20.** By virtue of this obligation of ordinary care and diligence and under the Company's Operating Agreement, Herrod was required, among other things, to:

> **a.** Protect the interest of the Company in the Company Assets;

**b.** Keep all books of account and other records of the Company, including the day-to-day accounting operation of the Company, in accordance with the terms of the Operating Agreement;

**c.** Prepare, or cause to be prepared, and deliver to each of the Members periodic financial reports, not less often than monthly, and audited annual financial reports;

**d.** Maintain all funds of the Company in one or more bank accounts as the Manager may select in the Manager's sole discretion;

**e.** Undertake such actions as are necessary or desirable in order to reasonably ensure that no action is taken by the Company, its directors, officers, employees and agents that is or may constitute a violation of any applicable laws, ordinances, orders, rules, regulations and requirements.

**f.** Use reasonable efforts to perform and observe in all material respects all covenants required to be performed and observed by the Company under instruments, contracts and agreements to which the Company is a party;

**g.** Enter into, amend, terminate, or renew any material agreement to which the Company is a party, including any agreement or arrangement granting a license or any other intellectual property rights to or from the company;

**h.** Settle, compromise, or consent to the entry of judgment in any claim, action, suit, proceeding or litigation brought or asserted against the Company, confess a judgment against the Company, or assigning all or any part of the assets of the Company in trust for the benefit of its creditors or on the assignee's promise to pay the debts of the Company;

**i.** Appoint or remove any officer or consultant of the Company or setting or modifying compensation or benefits paid to any such Person or any member, director or shareholder of a Member, or any Affiliate thereof;

**j.** Determine the amount or timing of any distributions made by the Company to its Members;

**k.** Determine the salaries and other compensation, if any, of the officers of the Company;

**l.** Determine the salaries and other compensation, of the employees and independent contractors of the Company;

**m.** Sell, assign, transfer, encumber or otherwise dispose of all or substantially all of the Company Assets in one transaction or in a series of related transactions, entering into any merger or consolidation transaction, or otherwise effecting any Change of Control, including, without limitation, negotiating and determining to accept any Buy Out Offer (as defined in Section 9.6);

**n.** Make distributions to Members pro rata in accordance with their Percentage Interests;

**o.** Provide to Members all financial statements as soon as available and deliver to Members, on a quarterly basis, unaudited consolidated balance sheet, income statement and statement of cash flows of the Company; and

**p.** Perform other normal business functions and otherwise operate and manage the business and affairs of the Company in accordance with and as limited by this Agreement and otherwise in the ordinary course of business.

**21.** Herrod breached his duty of loyalty, full disclosure, due care and/or good faith by improperly managing the Company, by causing waste to the Company, and by improperly receiving funds from the Company.

**ALKEMI'S MANAGEMENT AGREEMENT WITH CAPCS**

**22.** On September 30, 2014, Alkemi entered into the Management Agreement with CAPCS.

**23.** This Agreement obligated Alkemi (as "Manager" in these obligations) to the following obligations (all section references refer to the Management Agreement):

    **a.** The Manager will have the full, exclusive and complete duty and right to manage, control, conduct, supervise and administer the daily business and non-medical operations of the Centers[1], and will make all decisions and take any necessary or appropriate action in connection with the operation of the Centers; and

    **b.** The Manager will provide such services and exercise its rights and duties pursuant to this Agreement (i) in a commercially reasonable manner and with commercially reasonable efforts in a competent and professional manner, in accordance with generally accepted management, administrative and accounting practices, so as (A) to enable the Centers and the health care professionals practicing at the Centers to provide high quality health care services to patients, (B) to conduct the Centers' operations as efficiently and economically as practical, consistent with (1) the Owner's resources, (2) subject to the provisions of <u>Section 2.1(m)</u>, the Owner's then-current Annual operating budget and annual capital budget (as such terms are

---

[1] "Center" is defined in the management agreement as the medical and non-medical centers listed in the Management Agreement and all additional medical and non-medical centers owned, operated or controlled by CAPCS, its subsidiaries or affiliates, from time to time, during the term of the Management Agreement.

defined below), (3) the competitive marketplace within which the Centers operate and (4) all applicable laws.

**c.** The Manager will follow all policies and directives of the Owner as may be established by the Owner's Board of Advisors, from time to time, with respect to all medical, professional and ethical operation of the Centers.

**d.** Subject to the availability of funds, and subject further to the provisions of Section 2.1(n), the Manager will operate the Centers consistently with the Centers' then-current Annual operating budget and annual capital budget.

**e.** The Manager will operate the Centers and provide all services pursuant to this Agreement in accordance with all applicable laws.

**f.** The Manager will not undertake any activities that require licenses not available to the Manager or that the Manager otherwise does not possess. The Manager and its affiliates, officers, directors, employees, agents and representatives expressly do not, by this Agreement or otherwise, undertake to perform or provide any medical services to patients. All matters requiring or involving medical judgments or medical issues shall remain the responsibility of the professional medical practitioners who practice at the Centers.

**g.** The Manager will employ, retain or otherwise secure or enter into contracts with employees (or enter into employee leases or similar arrangements), including, but not limited to, an administrator for the Centers, consultants, accountants, agents or firms to assist in the business of the Owner, all on such terms and for such consideration as the Manager deems advisable, such consideration to be a normal operating expense.

**h.** The Manager will timely pay all operating costs and expenses associated with the ownership and operation of the Centers and the Owner's operation of the assets utilized in the operation of the Centers including without limitation, insurance; ad valorem taxes; maintenance costs; accounting and legal fees; rental and other payments under any lease or other agreement to which the Owner is a party; and principal and interest due on any indebtedness encumbering the Owner's assets.

**i.** Upon the Owner's approval, the Manager may (i) on behalf of Owner borrow money and, if security is required therefore, may mortgage or subject to any other security device any portion of the Owner's assets, (ii) obtain replacements of any mortgage, security deed or other security device, and (iii) prepay, in whole or in part, refinance, increase, modify, consolidate, or extend any mortgage, security deed or other device, all of the foregoing at such terms and in such amount as it deems to be in the best interest of the Owner;

**j.** The Manager will do all acts, procedures, authorizations and any and all other matters necessary, appropriate or related to obtaining and maintaining, in the name of the Owner, (i) all necessary and appropriate licenses, permits and approvals from all regulatory authorities having jurisdiction over the Centers and/or their operations, and (ii) such other accrediting bodies as may be designated by the Board of Advisors.

**k.** The Manager will supervise the issuance of bills and the collection of accounts receivable generated from the operation of the Centers or otherwise generated in connection with the business of the Owner.  All billing will be in the name of and on behalf of the Owner. The Owner hereby appoints the Manager, during the term of this Agreement, as its true and lawful attorney-in-fact to take such actions for and on behalf of the Owner to perform billing

and collection functions on behalf of the Owner and the Owner agrees to execute such other instruments reasonably requested by the Manager, including without limitation, a limited power of attorney, to effectuate same.

**l.** The Manager will open and maintain one or more bank accounts in the name and on behalf of the Owner for the deposit of the Owner's funds, with withdrawals to be made upon such signature or signatures as the Manager may designate.

**m.** The Manager will negotiate and enter into agreements, contracts, leases, instruments, documents and certifications for and on behalf of the Owner in the usual course of business necessary or convenient in connection with the conduct and operation of the business and purpose of the Owner and/or in furtherance of any of the foregoing, including (1) contracts of insurance naming both the Owner and the Manager as insureds as contemplated by Article 5, below, (2) managed care contracts, (3) contracts for participation in Medicare, Medicaid and other governmental reimbursement programs and (4) administrative contracts.

**n.** Subject to the approval of the Owner, the Manager may acquire, buy, lease, sell, transfer, or dispose of assets of the Owner; provided, however, that, without the prior approval of the Owner's Board of Advisors, the Manager may not sell, transfer or dispose of assets of the Owner with a market value in excess of $50,000 other than in the ordinary course of business.

**o.** Subject to the Owner's annual operating budget, the Manager shall establish all compensation, bonus, profit sharing and benefit plans for the Centers.

**p.** The Manager will set pricing for all goods and services provided by the Centers.

**q.** The Manager will establish policies and procedures for the management and ongoing operations of the Centers.

00837833                          17

**r.** The Manager will prepare and submit, in a proper manner and in a timely fashion, all reports required to be submitted pursuant to the requirements of third party payors or any Governmental Authority having jurisdiction over the Centers. "Governmental Authority" shall mean any national, state or local government, any political subdivision thereof or any other governmental, quasi-governmental, judicial, public or statutory instrumentality, authority, body, agency, department, bureau, commission or entity, or any arbitrator with authority to bind a party at law.

**s.** The Manager will design, institute, supervise and, in its discretion, from time to time revise and amend management, financial and informational systems in order to conduct the physical and administrative operations of the Centers, including, without limitation, those required for billing and collection of charges, accounting and purchasing.

**t.** Not less than 90 days prior to the end of each fiscal year of the Owner during the term of this Agreement, the Manager will submit proposed annual operating and capital budgets for the Owner to the Owner's Board of Advisors for approval, disapproval or modification...

**u.** The Manager will report to and inform the Board of Advisors concerning all material events, activities and/or issues that involve or relate to the management, operations activities and condition of the Centers. The Manager will make such reports at each regularly scheduled meeting of the Board of Advisors and, in the absence of such meeting during any fiscal quarter, within a reasonable time period following the end of such fiscal quarter.

**v.** The Manager will submit to the Owner's Board of Advisors for its review and approval an annual management plan outlining the Manager's recommended goals and objectives for the Centers and the methods and resources to be used to achieve these goals and

objectives.  The management plan for each fiscal year will be due no later than 90 days prior to the end of the preceding fiscal year of the Owner.  Furthermore, the Manager will deliver to the Owner's Board of Advisors a written annual report on the completion of the goals and objectives set forth in the management plan approved by the Owner's Board of Advisors.  Notwithstanding anything to the contrary herein, the failure of the Owner's Board of Advisors to approve a proposed annual management plan shall not constitute a breach of this Agreement by the Manager.

**w.** After consulting with the Owner and after receiving the Owner's approval of the selection of counsel and the position to be taken in any adversarial situation affecting the Centers, the Manager may adjust, arbitrate, compromise, sue or defend, abandon, or otherwise deal with and settle any and all claims in favor of or against the Owner that arise in the ordinary course of the Owner's business; provided, however, that the Manager will not settle any claims against the Owner in an amount greater than $20,000 or reduce any claim by the Owner against any third party by an amount greater than $20,000 without the approval of the Owner's Board of Advisors.

**x.** The Manager will obtain and maintain forms, records and documents as may be reasonably necessary (and/or required by law) to assure the availability of appropriate and accurate information for the administration of the Centers.

**y.** The Manager will perform ongoing inspections of the Centers' facilities and equipment, and, at the Owner's expense, will maintain the Centers' facilities and equipment in good operating condition and repair to the extent financially feasible under the approved Annual Budget and the approved Annual Capital Budget.  The Manager will provide recommendations

to the Owner with respect to any capital improvements to the Centers' facilities, and shall promptly report to the Owner any significant maintenance conditions that adversely affect or could adversely affect the services performed at the Centers or that are not contemplated by the then current Owner's annual operating budget or annual capital budget.

**z.** The Manager will perform such additional services as reasonably requested by the Owner and agreed to by Manager relating to the operation of the Centers.

**aa.**     The Manager agrees to review, direct and supervise the following accounting and bookkeeping services for the Owner in the operation of the Centers:

> **i.**   Maintain the books of account, including all journals and ledgers, check register and payroll records;
>
> **ii.**   Post all patient and other charges, including necessary analysis and corrections;
>
> **iii.**   Establish billing, receivables, credit and collection policies and procedures and oversee such activity;
>
> **iv.**   Process vendors' invoices and other accounts payable; prepare checks for such payables and obtain the signature of the Owner's authorized representatives;
>
> **v.**   To the extent such services are not otherwise provided by a third party leasing company, prepare or contract for processing payroll checks from time sheet summaries prepared under the Manager's supervision including applicable tax deposits;
>
> **vi.**   Supervise preparation of the Owner's tax returns;

     **vii.**   Prepare monthly bank reconciliations;

     **viii.**   Prepare monthly, quarterly and annual unaudited income statements and balance sheets, the format of which shall be compatible with the information systems of the Owner; such financial statements (i) will be prepared on an accrual basis in accordance with GAAP and the accounting policies and procedures of Manager, and (ii) will be delivered to the Board of Advisors within 20 days of the end of each applicable monthly or quarterly period and, in the case of the year-end financial statements, within 30 days of the end of the applicable year;

     **ix.**   If requested to do so by the Board of Advisors, contract for and supervise the preparation of annual audited financial statements of the Owner by an independent certified public accounting firm acceptable to the Owner; and

     **x.**   Conduct meetings, no less than quarterly, or as otherwise necessary with the Owner's personnel, either telephonically or on-site as required.

     **bb.**   The Manager agrees that it shall not, without the express prior written consent of the Owner, use the Owner Confidential Information for any purpose other than the performance of this Agreement nor allow anyone access to such except on a need to know basis. The Manager further agrees to keep strictly confidential and hold in trust all Owner Confidential Information and not disclose or reveal such information to any third party (other than the affiliates of the Manager) without the express prior written consent of the Owner. In connection with the foregoing, the Manager shall ensure that its affiliates also maintain the

confidentiality of the Owner Confidential Information in accordance with the terms of this Agreement.

## HERROD'S ACTIONS

**24.** Despite Herrod's duties as the manager and controlling member of Alkemi and under the Management Agreement, he has systematically and purposefully violated those duties.

**25.** On information and belief, Herrod has used funds of the Company to pay for personal expenses incurred by him and his family. This includes but is not limited to the leasing/purchase of a luxury automobile and numerous non-business trips.

**26.** Pursuant to the Management Agreement with CAPCS, Alkemi was required to provide a fair market value valuation by December 29, 2014. This valuation was a key element to the agreement between Alkemi and CAPCS. Herrod never delivered this valuation, and there is no information to date that he attempted to provide the valuation. This failure was instrumental in CAPCS's later removal of Alkemi as manager.

**27.** Herrod also suppressed payments made to Alkemi from CAPCS. This included but was not limited to a payment of approximately $195,000 on January 15, 2015.

**28.** Herrod, on behalf of Alkemi and without permission of the members of either Alkemi or CAPCS, took leave as to his duties in relation to CAPCS from October 1, 2014, to December 31, 2014. During this time he paid himself compensation as if he were actively managing CAPCS. This action was key in CAPCS'S suspension of the Management Agreement.

**29.** Herrod claimed expenses in excess of that allowed under the Management Agreement with CAPCS and beyond those justified under the circumstances. These were made at the expense of the Company and its contractual obligations.

**30.** Herrod transferred assets of the Company to other entities without approval by its members, and these transfers were for Herrod's financial benefit.

**31.** Herrod misappropriated funds received by Alkemi or CAPCS from third-parties for his own financial benefit.

**32.** Herrod harassed Defendant Brobst.  Herrod then stated he was leaving the management of Alkemi. These actions were to the detriment of Alkemi.

**33.** Herrod improperly managed CAPCS by not paying vendors' obligations and/or certain taxes as bills came due despite having the funds to pay them, causing cancellations of some services and products by vendors. Herrod diverted these funds to his own use.

**34.** Herrod failed to properly contribute to employee 401k plans and retirement plans despite withdrawing these funds from employee paychecks.

**35.** Herrod improperly ousted Counter-Claim Plaintiffs as Members of the Company.

**36.** Herrod did not provide financial information to the members of Alkemi or CAPCS.

**37.** Herrod improperly reduced the salaries of physicians and diverted the funds to other expenses.

**38.** Herrod incurred debt on behalf of CAPCS without the proper authority.

**39.** Herrod made a capital call on a member of CAPCS that was inconsistent with the governing documents of CAPCS.

**40.** Herrod also caused funds from Primed Physicians, Inc., to be loaned to Alkemi despite his knowledge that such funds were not properly approved to be loaned by Primed Physicians, Inc., and were not properly allocated.

00837833                                   23

**41.** Herrod also caused the improper transfer of over $300,000 worth of furniture and other assets from Primed Physicians, Inc., to Alkemi.

**42.** Herrod directed the reduction of staff managing CAPCS's facilities to below a functional level and created dissention among the physicians and other employees which significantly injured CAPCS. These actions were taken without regard to contractual obligations to CAPCS.

**43.** As a result of these actions, CAPCS terminated Alkemi's management tenure on January 19, 2015. This has caused irreparable damage to Alkemi since CAPCS was its only client.

**44.** After the termination of the Management Agreement, Herrod improperly took control of assets of CAPCS, including servers and patient records, and refused to give CAPCS access to the same.

**45.** These actions forced CAPCS to file a temporary injunction against Alkemi in Tennessee federal court.

**46.** CAPCS succeeded in securing said injunction, and Alkemi was forced to return the servers and information contained therein.

**47.** These actions, on information and belief, caused great loss through the cost of litigation to Alkemi.

**DIRECT ACTIONS AGAINST HERROD**

**COUNT 1 - Fraudulent Inducement and Misrepresentation**

**48.** Counter-Claim Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as if set forth herein.

**49.** Herrod misrepresented to each Muller, Brobst and Wooldridge that he would manage the Company and their monies in a prudent manner to benefit the Company, fully knowing he had no

intention to manage the Company or the monies prudently, in order to induce Muller, Brobst and Wooldridge to give him money and control.

**50.** Herrod made those representations to Counter-Claim Plaintiffs in order to obtain company monies to divert to himself.

**51.** Herrod reaffirmed these fraudulent representations through the Relevant Period.

**52.** Muller, Brobst and Wooldridge justifiably relied on Herrod's representations, and as a result, each has personally lost money, time and business relationships.

**53.** Had Muller, Brobst, or Wooldridge known Herrod was materially misrepresenting his intended actions, they would not have entrusted Herrod with their monies or control of their property.

**54.** By a direct result of Herrod's fraudulent inducements, all Defendants have suffered losses.

Muller, Brobst and Wooldridge seek actual damages to be proven at trial, punitive damages, attorneys' fees and court costs, and any other relief this Court deem appropriate.

## COUNT 2 - Breach of Contract

**55.** Counter-Claim Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as if set forth herein.

**56.** Herrod and Counter-Claim Plaintiffs entered into a contract. Counter-Claim Plaintiffs performed all, or substantially all, of the essential obligations which the contract required each Counter-Claim Plaintiff to do. All conditions required by the contract for Herrod's performance had occurred, and yet Herrod intentionally failed to perform his contractual duties.

**57.** As a result of Herrod's breach of contract, each Counter-Claim Plaintiff's share in the Company was harmed. Each Counter-Claim Plaintiff has been directly and substantially injured by reason of Herrod's intentional breach of his contractual duties to each Counter-Claim Plaintiff. Counter-Claim Plaintiffs, with respect to the damages done to each of their individual shares, seek damages and other relief, in an amount to be proven at trial.

Muller, Brobst and Wooldridge seek actual damages to be proven at trial, punitive damages, attorneys' fees and court costs, and any other relief this Court deem appropriate.

## COUNT 3 - Breach of Fiduciary Duty

**58.** Counter-Claim Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as if set forth herein.

**59.** Herrod owes each Counter-Claim Plaintiff fiduciary obligations. By reason of his fiduciary relationship, he owed and owes each Counter-Claim Plaintiff the highest obligation of good faith, fair dealing, loyalty, due care, reasonable inquiry, and supervision.

**60.** Herrod violated and breached his fiduciary duties of good faith, fair dealing, loyalty, due care, reasonable inquiry, and supervision.

**61.** The above referenced actions were not a good faith exercise of prudent business judgment to protect and promote each Counter-Claim Plaintiff's share in the Company.

**62.** As a direct and proximate result of the Counter-Claim Defendants' breaches of their fiduciary duties, Counter-Claim Defendants have caused, and will continue to cause, each Counter-Claim Plaintiff to suffer substantial monetary damages as a result of the wrongdoing described herein, as well as further and even greater damage in the future, including damage to each Counter-Claim Plaintiff's reputation, business and goodwill.

**63.** Each Counter-Claim Plaintiff has been directly and substantially injured by reason of Herrod's intentional breach and/or reckless disregard of his fiduciary duties to the Counter-Claim Plaintiffs. Counter-Claim Plaintiffs, with respect to the damages done to each of their individual shares, seek damages and other relief, in an amount to be proven at trial.

Muller, Brobst and Wooldridge seek actual damages to be proven at trial, punitive damages, attorneys' fees and court costs, and any other relief this Court deem appropriate.

<b>COUNT 4 - Failure to Prudently Manage Assets</b>

**64.** Counter-Claim Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

**65.** By his actions alleged herein, Herrod abandoned and abdicated his responsibilities and fiduciary duties with regard to prudently managing the assets and business of each Counter-Claim Plaintiff's share in the Company in a manner consistent with the operations of a company.

**66.** As a direct and proximate result of Herrod's gross mismanagement and breaches of duty alleged herein, each Counter-Claim Plaintiff has sustained and will continue to sustain significant damages.

**67.** As a result of the misconduct and breaches of duty alleged herein, Herrod is liable to each Counter-Claim Plaintiff.

Muller, Brobst and Wooldridge seek actual damages to be proven at trial, punitive damages, attorneys' fees and court costs, and any other relief this Court deem appropriate.

<b>COUNT 5 - Waste</b>

**68.** Counter-Claim Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

**69.** By engaging in the wrongdoing alleged herein, Herrod intentionally wasted corporate assets by, among other things, improperly allocating assets, improperly managing the Company, and intentionally converting third-party assets, damaging the goodwill and reputation of the each Counter-Claim Plaintiff's membership interest, and exposing each Counter-Claim Plaintiff to civil and criminal liability, for which Herrod is liable.

**70.** As a direct and proximate result of Herrod's wrongful conduct, each Counter-Claim Plaintiff has suffered damages in an amount to be proven at trial.

Muller, Brobst and Wooldridge seek actual damages to be proven at trial, punitive damages, attorneys' fees and court costs, and any other relief this Court deem appropriate.

<h3 style="text-align:center">COUNT 6 - Unjust Enrichment</h3>

**71.** Counter-Claim Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

**72.** As a result of the actions set forth herein, Herrod has been and will continue to be unjustly enriched at the expense of and to the detriment of each Counter-Claim Plaintiff.

**73.** Accordingly, this Court should order Herrod to disgorge all profits, benefits and other compensation obtained from his wrongful conduct and fiduciary breaches described herein.

Muller, Brobst and Wooldridge seek actual damages to be proven at trial, punitive damages, attorneys' fees and court costs, and any other relief this Court deem appropriate.

<h3 style="text-align:center">COUNT 7 - Failure to Disclose Records</h3>

**74.** Counter-Claim Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

**75.** Despite the futility of demand, the Counter-Claim Plaintiffs made a demand to review Alkemi's records as permitted under Fla. Stat. § 605.0410 and the Operating Agreement.

**76.** Counter-Claim Defendant Alkemi did not respond to this request in violation of Fla. Stat. § 605.0410(3)(c). This refusal has frustrated Counter-Claim Plaintiffs' ability to defend the present suit and to fully realize the scope of Herrod's malfeasance in relation to Alkemi and the members of Alkemi.

**77.** Counter-Claim Plaintiffs hereby request the production of the records as required under Fla. Stat. § 605.0410. Counter-Claim Plaintiffs also ask for costs and reasonable attorneys' fees involved in securing said records.

Muller, Brobst and Wooldridge seek actual damages to be proven at trial, punitive damages, attorneys' fees and court costs, and any other relief this Court deem appropriate.

<strong><u>COUNT 8 - Improper Ouster</u></strong>

**78.** Counter-Claim Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

**79.** Any claim by Alkemi that Counter-Claim Plaintiffs were ousted as Members of the Company is invalid as Herrod's attempt to oust the Counter-Claim Plaintiffs was in violation of Fla. Stat. § 605.04092.

Muller, Brobst and Wooldridge seek actual damages to be proven at trial, punitive damages, attorneys' fees and court costs, and any other relief this Court deem appropriate.

<strong><u>DERIVATIVE ACTION AND DEMAND FUTILITY ALLEGATIONS</u></strong>

**80.** Counter-Claim Plaintiff Muller brings this action derivatively in the right and for the benefit of the Company to redress the injuries suffered, and to be suffered, by the Company as a

direct result of the breach of fiduciary duty, waste of corporate assets, and unjust enrichment, alleged herein. The Company is named as a nominal Defendant solely in a derivative capacity.

**81.** Muller will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights.

**82.** Muller is and has continuously been a member of the Company during the occurrence of the wrongful conduct alleged herein.

**83.** This action is not brought in collusion to confer jurisdiction on this Court.

**84.** Muller did not make demand on the Manager Herrod to bring this action on behalf of the Company because such a demand would have been a futile, wasteful and useless act for the following reasons:

  a. Herrod authorized, approved, ratified or has failed to rectify some or all of the actions at issue herein and is named as a Counter-Claim Defendant herein;

  b. The actions taken were not justified and not within Herrod's business judgment;

  c. There was no valid basis for the actions taken by Herrod. Herrod's actions were designed solely to benefit himself in a manner that was inconsistent with the Company's best interests and to the detriment of the Company. Hence, the actions of Herrod constitute waste of corporate assets, and could not have been the exercise of the proper business judgment of Herrod.

### COUNT 9 - Breach of Fiduciary Duty

**85.** Muller incorporates by reference and realleges each and every allegation set forth above, as if set forth herein.

**86.** Herrod owes the Company fiduciary obligations. By reason of his fiduciary relationship, he owed and owes the Company the highest obligation of good faith, fair dealing, loyalty and due care.

**87.** Herrod violated and breached his fiduciary duties of care, loyalty, reasonable inquiry, good faith, and supervision.

**88.** The above-referenced actions were not a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

**89.** As a direct and proximate result of the Counter-Claim Defendants' breaches of their fiduciary duties, Counter-Claim Defendants have caused, and will continue to cause, the Company to suffer substantial monetary damages as a result of the wrongdoing described herein, as well as further and even greater damage in the future, including damage to the Company's reputation, business and goodwill.

**90.** The Company has been directly and substantially injured by reason of the Counter-Claim Defendants' intentional breach and/or reckless disregard of their fiduciary duties to the Company.

Muller, as a member and representative of the Company, seeks actual damages to be proven at trial, punitive damages, attorneys' fees and court costs, and any other relief this Court deem appropriate.

## COUNT 10 - Failure to Prudently Manage Assets

**91.** Muller incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

**92.** By their actions alleged herein, the Counter-Claim Defendants abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and

00837833                                31

business of the Company in a manner consistent with the operations of a limited liability company.

93. As a direct and proximate result of the Counter-Claim Defendants' gross mismanagement and breaches of duty alleged herein, the Company has sustained and will continue to sustain significant damages.

94. As a result of the misconduct and breaches of duty alleged herein, the Counter-Claim Defendants are liable to the Company.

Muller, as a member and representative of the Company, seeks actual damages to be proven at trial, punitive damages, attorneys' fees and court costs, and any other relief this Court deem appropriate.

## COUNT 11 - Waste

95. Muller incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

96. By engaging in the wrongdoing alleged herein, Herrod intentionally wasted Company assets by, among other things, improperly allocating assets, improperly managing the Company, and intentionally converting third-party assets, damaging the goodwill and reputation of the each Counter-Claim Plaintiff's membership interest, and exposing each Counter-Claim Plaintiff to civil and criminal liability, for which Herrod is liable.

97. As a direct and proximate result of Counter-Claim Defendants' wrongful conduct, the Company has suffered damages in an amount to be proven at trial.

Muller, as a member and representative of the Company, seeks actual damages to be proven at trial, punitive damages, attorneys' fees and court costs, and any other relief this Court deem appropriate.

### COUNT 12 - Unjust Enrichment

**98.** Muller incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

**99.** As a result of the actions set forth herein, Herrod has been and will continue to be unjustly enriched at the expense of and to the detriment of the Company.

**100.** Accordingly, this Court should order Herrod to disgorge all profits, benefits and other compensation obtained from his wrongful conduct and fiduciary breaches described herein.

Muller, as a member and representative of the Company, seeks actual damages to be proven at trial, punitive damages, attorneys' fees and court costs, and any other relief this Court deem appropriate.

### COUNT 13 - Failure To Disclose Records

**101.** Muller incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

**102.** Despite the futility of demand, the Counter-Claim Plaintiffs made a demand to review Alkemi's records as permitted under Fla. Stat. § 605.0410 and the Operating Agreement.

**103.** Counter-Claim Defendants Herrod and Alkemi did not respond to this request in violation of Fla. Stat. § 605.0410(3)(c). This refusal has frustrated Counter-Claim Plaintiffs' ability to defend the present suit and to fully realize the scope of Herrod's malfeasance in relation to Alkemi.

**104.** Muller hereby requests the production of the records as required under Fla. Stat. §
605.0410.

Muller, as a member and representative of the Company, seeks actual damages to be proven
at trial, punitive damages, attorneys' fees and court costs, and any other relief this Court deem
appropriate.

## COUNT 14 - Accounting

**105.** Muller incorporates by reference and realleges each and every allegation set forth
above, as though fully set forth herein.

**106.** Based on the actions of Herrod, Muller hereby requests an accounting of the assets
of the Company.

Muller, as a member and representative of the Company, seeks actual damages to be proven
at trial, punitive damages, attorneys' fees and court costs, and any other relief this Court deem
appropriate.

Wherefore premises considered, the Counter-Claim Plaintiffs ask this Court to find in their
favor on all counts and to award damages the form of compensatory, equitable, punitive,
attorneys' fees and costs and any other relief this Court deems proper.

Respectfully submitted,

By:   /s/ *Anthony C. Hevia, Esq.*
    Anthony C. Hevia, Esq.
    Fla. Bar No.: 41148

Email: AHevia@TrujilloVargas.com
**TRUJILLO VARGAS**
**ORTIZ & GONZALEZ, LLP**
815 Ponce de Leon Blvd., Third Floor
Coral Gables, FL 33134

**104.** Muller hereby requests the production of the records as required under Fla. Stat. § 605.0410.

Muller, as a member and representative of the Company, seeks actual damages to be proven at trial, punitive damages, attorneys' fees and court costs, and any other relief this Court deem appropriate.

**COUNT 14 - Accounting**

**105.** Muller incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

**106.** Based on the actions of Herrod, Muller hereby requests an accounting of the assets of the Company.

Muller, as a member and representative of the Company, seeks actual damages to be proven at trial, punitive damages, attorneys' fees and court costs, and any other relief this Court deem appropriate.

Wherefore premises considered, the Counter-Claim Plaintiffs ask this Court to find in their favor on all counts and to award damages the form of compensatory, equitable, punitive, attorneys' fees and costs and any other relief this Court deems proper.

Respectfully submitted,

By: _/s/ Anthony C. Hevia, Esq._
Anthony C. Hevia, Esq.
Fla. Bar No.: 41148

Email: AHevia@TrujilloVargas.com
**TRUJILLO VARGAS**
**ORTIZ & GONZALEZ, LLP**
815 Ponce de Leon Blvd., Third Floor
Coral Gables, FL 33134

00837833

Tel: (305) 631-2528
Fax: (305) 631-2741
eService: BOrtega@TrujilloVargas.com

35

## VERIFICATION OF DERIVATIVE CLAIM

Under penalties of perjury, I, A. Chandler Muller, declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief.

_____
A. Chandler Muller

STATE OF ALABAMA
COUNTY OF MONTGOMERY
I, the undersigned, a Notary Public in and for said County and State, do hereby certify that A. Chandler Muller, whose name is signed to the foregoing and who is known to me or who produced identification to me, acknowledged before me on this day that he signed that instrument as his free and voluntary act on the day the same bears date for the uses and purposes therein set forth.

GIVEN under my hand and seal, the 17th day of June, 2015.

Notary Public

My Commission Expires: 9/23/17

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed using the Court's electronic filing system, and a copy of same has been furnished to the below named Attorneys of Record by email on this 17th day of June, 2015:

**James D. Tittle, Esq.**
**John W. Clark, IV, Esq.**
BAINBRIDGE, MIMS, ROGERS & SMITH, LLP
The Luckie Bldg., Suite 415
600 Luckie Drive (35223)
P.O. Box 530886
Birmingham, AL 35253
Telephone: (205) 879-1100
Facsimile: (205) 879-4300
Primary email:        jclark@bainbridgemims.com
Secondary email:      lcarpenter@bainbridgemims.com

/s/ *Anthony C. Hevia, Esq*
OF COUNSEL

00837833                          37